IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

          Plaintiff,

vs.                                       CR 06-402 JC

RICKY LEE SULLIVAN,

          Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant's Motion to Suppress, filed July 5, 2006 (*Doc. 19*).  Having carefully considered the Motion, the parties' submissions, the relevant authority, and being otherwise fully advised, I find a hearing in this matter unwarranted and I further find the Motion not well-taken and it is, therefore, DENIED.

I.      **Background**

On October 6, 2005, at approximately 8:45 p.m., a neighbor of Defendant Sullivan phoned the Bloomfield Police Department ("BPD") and reported that Sullivan had followed him from Sullivan's residence on the 1000 block of Chaparral Street in Bloomfield, New Mexico, driving a white truck while brandishing a firearm. BPD officers were dispatched to the neighbor's residence at 1005 Chaparral to investigate the allegations of aggravated assault.  The neighbor, Ruben Royval, informed the officers that a confrontation had taken place between Sullivan and him, during which Sullivan waved a gun at Royval from inside the truck.  Specifically, Royval stated that he and his stepson were driving toward their home across the street from Sullivan's home

when Royval observed Sullivan back his pickup truck across the street and into Royval's

driveway.  Sullivan then pulled out of the driveway and parked his truck in the middle of the

street, blocking Royval's entrance to his driveway.  Next, Sullivan backed into his own driveway

and Royval pulled into his driveway, entered his home and retrieved some items, and began to exit

his driveway.  While Royval and his stepson were backing out of their driveway, Sullivan made an

obscene gesture toward them.  When Royval began driving down the street, Sullivan followed

him to the intersection of Chaparral and Blanco Streets, at which point Sullivan pulled up very

close to the driver's side of Royval's vehicle.  Sullivan's vehicle was so close to Royval's that

Royval would have been unable to open the door and exit the vehicle had he wanted to.  Sullivan

then began waving and pointing a gun at Royval and his stepson.  Sullivan and Royval began to

shout at one another.  When Royval attempted to drive away, Sullivan blocked his way with the

truck.  Royval stated that he was in fear for his life and the life of his stepson.  When Sullivan

drove away, Royval followed him, drove past Sullivan's residence then pulled over and called the

police on his cell phone.  Based upon the conversation with Royval, BPD Officer Logan arrested

Sullivan without a warrant outside of Sullivan's residence at approximately 9:00 p.m., charging

Sullivan with aggravated assault with a deadly weapon.  *See* Resp. Ex. 2.

       Based on statements made by Royval describing the scenario discussed above and the fact

that Sullivan was not in possession of a firearm when arrested, BPD Officer Whitaker applied for

a warrant to search Sullivan's residence at 1002 Chaparral and his vehicles.  *See* Resp., Exs. 1,3.

The Affidavit in support of the warrant, dated October 7, 2005 ( "Affidavit I"), recounted

Royval's narration of the events leading to Sullivan's arrest, including, of course, the fact that

Sullivan was driving his white pickup.[1]  Affidavit I identified Sullivan's address as 1002 Chaparral; described the residence in detail as white in color with a brick facade extending half way up; further described the front door of the residence; stated that there was a white tent-like structure in the driveway and a trailer next to the tent; and stated that the dwelling described was the residence of Defendant Sullivan.  *See Id.*  Affidavit I also identified the subject of the search to be a semi-automatic weapon, possibly grey and black in color.  Affidavit I further indicated that no weapon was found on Sullivan's person when he was arrested.

After Warrant I was obtained, Sergeant Martinez and Officer Logan began to search the white GMC pickup truck belonging to Sullivan.  When Logan opened the door, he saw what appeared to be a box of pistol ammunition on the driver's side floor.  Upon closer examination, Logan noticed a black zippered bag in the same area.  The bag was large enough to contain a small handgun.  Logan picked up the bag and unzipped it.  Inside he found a clear plastic baggie containing a white, powdery substance, which he suspected to be an illegal substance.  Officer Logan notified Sergeant Martinez of the substance.  Martinez also saw what appeared to be a "crank" pipe in the truck.  Sergeant Martinez immediately contacted agents with the Region-II narcotics force.

Subsequently, a second search warrant ("Warrant II") was sought and obtained to search anything, including  persons, within the curtilage of the residence and any parked vehicles on or adjacent to the property.  The affidavit in support thereof ("Affidavit II") identified the residence as 1002 Chaparral St., Bloomfield, New Mexico, contained, *inter alia*, Agent Current's explanation that narcotics traffickers maintain firearms for their protection; detailed Current's

---

[1]Sullivan notes that Warrant I did not specify the truck.  Mot. at 3.

3

belief, based on his training and experience, that drug dealers frequently hide controlled substances in or near their homes, including outbuildings, places in the yard described a small trailer in the driveway and vehicles parked in front of the residence; described a tent located in the driveway; identified utility records from the residence in the name of Pamela Sullivan, Defendant's spouse; affirmed Agent Current's personal knowledge that Defendant Sullivan resides at the residence; details a phone call Current received from Sergeant Martinez explaining that during the course of Martinez' search for a gun used in a crime, agents had located a crank pipe and what was suspected to be methamphetamine in a black bag.

## II.    Standard of Review

"A magistrate's determination of probable cause should be paid great deference by reviewing Courts."  *Illinois v. Gates*, 462 U.S. 213, 236 (1983).  However, this deference is not boundless, and an issuing judge cannot act as a rubber stamp for law enforcement.  *U.S. v. Leon*, 468 U.S. 897, 914 (1984).  "The duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed."  *Id.* at 238.

## III.    Discussion

*The First Search Warrant  (Weapon)*

As the government asserts, Defendant Sullivan did not specifically request an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 1954 (1978), and if he had, he should not be granted such a hearing on the facts presented here.  In *Franks*, the Supreme Court set forth the following standard for determining if a defendant is entitled to such a hearing to examine the factual truthfulness of an affidavit.  The *Franks* Court stated, in pertinent part:

4

There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

*Franks*, 438 U.S. at 171-72. Sullivan makes no arguments to support a conclusion that Detective Whitaker and Deputy Current made any false statements in their affidavits supporting either search warrant, let alone that such statements were made knowingly, intentionally, or with reckless disregard for the truth. Moreover, the purportedly omitted facts known to Whitaker and Current would have *bolstered* the affidavit's showing of probable cause if included. Accordingly, no evidentiary hearing is warranted on this basis.

"The task of a [warrant] issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. at 328; *see also U.S. v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000) ("[a]n affidavit in support of a search warrant must contain facts sufficient to lead a prudent person to believe that a search would uncover contraband or evidence of criminal activity"). Moreover, "a law enforcement agent's opinion, based upon his professional expertise, that evidence of illegal

5

activity will be found in the place to be searched, is entitled to consideration in [the] determination of whether probable cause existed at the time a warrant is issued." *U.S. v. Mathis*, 357 F.3d 1200, 1205 (10th Cir. 2004).

Sullivan's primary argument for suppression is grounded in his assertion that, though probable cause may have existed based upon all the information known to the affiants, such information was not completely communicated to the judicial officer in the affidavits supporting Warrant I.  Thus, Sullivan concludes, the Magistrate Judge's determination that probable cause sufficient to issue the warrant existed was erroneous because the affidavits failed to establish a nexus between the contraband and Sullivan's residence.  In support of his assertion, Sullivan relies in part on a concurring opinion in a Sixth Circuit decision for the proposition that "[k]nowing additional facts that may establish probable cause, but that weren't presented to the issuing magistrate does not establish the officer reasonably believed the warrant was properly issued." *U.S. v. Carpenter*, 360 F.3d 591, 598 (6th Cir. 2003) (Gilman, J. concurring).

Yet, in the Tenth Circuit Sullivan's argument must fail, for reasonable officers could have believed that Affidavit I, as submitted, even lacking purported additional, relevant information known to the officers, was sufficient to support the issuance of the warrant.  This is true even assuming, without determining, that Affidavit I was in fact deficient.  Accordingly, the good faith exception to the probable cause for warrant would apply to prevent suppression.  *See U.S. v Rowland*, 145 F.3d 1194 (10th Cir. 1998).

Moreover, contrary to the Tenth Circuit case law cited by Sullivan in support of his Motion, this was not an anticipatory warrant.  The issuing Magistrate Judge here was not asked to determine whether probable cause exists contingent upon some future event.  Furthermore,

insofar as Sullivan states that "the only link between Sullivan and the Residence found within the First Affidavit is a hand-written notation...which states 'this is the residence of Rick Sullivan,'" and that "[t]he First affidavit contains no indication as to who wrote this sentence, nor any indication as to when the handwritten sentence was added," the Court assumes that because Affidavit I was sworn by Detective Whitaker, it was he who wrote that sentence.[2]  Mot. at 3.   In short, the Court finds the Affidavit I sufficiently linked Sullivan to the crime, to his vehicle, and to his residence.

*The Second Search Warrant (Drugs)*

The Affidavit for Warrant II was written by Agent Current of the San Juan County Sheriff's Office, Region II Narcotics Enforcement Task Force.  Agent Current has been a certified and commissioned peace officer since October 30, 2000.  In September 2003, Current was assigned to the Region II Narcotics Task Force, a multi-agency, multi-jurisdictional initiative having as its purpose to investigate, apprehend, and prosecute violators of the New Mexico Controlled Substance Act.  Current has undergone extensive training in the investigation of narcotics laws violations.

Sullivan argues that the second search warrant obtained was tainted by the first, citing *United States v. Lin Lyn Trading, Ltd.*, 149 F.3d 1112 (10th Cir. 1998).  That case, however, is plainly distinguishable.  In *Lyn*, a United States Customs agent relied on a tip from an informant that the defendant was illegally importing trademark toys and began a criminal investigation based

---

[2]Surely Defendant Sullivan does not expect the Court to suppress evidence gathered against him by virtue of his unsubstantiated insinuation that the handwritten expression of the nexus between Sullivan and his dwelling was not present when the Magistrate issued the warrant.

upon that information and the discovery of undeclared merchandise.  Customs agents then obtained a search warrant covering defendant's premises and many documents were seized therein.  Nearly a month later, the *Lyn* defendant was detained by Customs and agents found and kept a note pad containing privileged, written communication between defendant and his attorney. Defendant's motion to suppress evidence was granted in that case because the court determined that the protected communication had provided the road map for the case built against that defendant.  *Id.*  While *Lyn* is an interesting and informative case indeed, the Court finds it does not bear significantly on the issues before it on this Motion.

## III.    Conclusion

In summary, even if either affidavit lacked probable cause, it is clear under settled law that neither affidavit was so lacking in the indicia of probable cause as to render reliance on it unreasonable.  Therefore, the good faith exception is available to render suppression unjustified.

WHEREFORE,

**IT IS ORDERED** that Defendant's Motion to Suppress, filed July 5, 2006 (*Doc. 19*) is **DENIED.**

Dated this 12th day of October, 2006.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:

Rumaldo Armijo, AUSA
Albuquerque, New Mexico

Counsel for Defendant:

8

Billy R. Blackburn, Esq.
Albuquerque, New Mexico